## BURNS *v.* HALE.

HINES, J. 1. An interlocutory injunction which, if enforced, would result in the dispossession of the defendant and the admission of the plaintiff into the possession of the premises in controversy, is in legal effect a mandatory injunction; and the relief afforded by such injunctive order is not, under our law, within the proper scope of the writ of injunction. *Russell* v. *Mohr-Weil Lumber Co.,* 102 *Ga.* 563 (29 S. E. 271) ; *Vaughn* v. *Yawn,* 103 *Ga.* 557 (29 S. E. 759) ; *Glover* v. *Newsome,* 134 *Ga.* 375 (67 S. E. 935) ; *Mize* v. *Herring,* 137 *Ga.* 815 (74 S. E. 534) ; *Dekle* v. *McLeod,* 144 *Ga.* 290 (86 S. E. 1082) ; *Brown* v. *Toole,* 150 *Ga.* 196 (2) (103 S. E. 226) ; *Trudie Turpentine Co.* v. *Pearson,* 159 *Ga.* 387 (125 S. E. 862) ; Civil Code (1910), § 5499.

2. On the hearing of an application for temporary injunction the judge should not grant a permanent injunction, but only one of an ad interim character, to remain in force until the final trial. *Southern Cotton Oil Co.* v. *Overby,* 136 *Ga.* 69 (70 S. E. 664) ; *Brown* v. *Smith,* 150 *Ga.* 111 (102 S. E. 813).

3. While the extraordinary remedy of injunction does not lie in favor of one who has a complete and adequate remedy at law (*Rice* v. *Macon,* 117 *Ga.* 401, 43 S. E. 773; *Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* 118 *Ga.* 255, 45 S. E. 267; *Detwiler* v. *Bainbridge Grocery Co.,* 119 *Ga.* 981, 47 S. E. 553), injunction will lie to prevent a multiplicity of suits (*Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* supra), and to prevent continuing trespasses and continuing acts of waste. *Martin* v. *Pattillo,* 126 *Ga.* 436 (55 S. E. 240) ; *Caverly* v. *Stovall,* 143 *Ga.* 705, 708 (85 S. E. 844) ; *Cartledge* v. *Ashford,* 152 *Ga.* 674 (110 S. E. 907). The defendant being charged with continuing acts of trespass and waste, and there being some evidence which would authorize the trial judge to find that these charges were true in part, we can not say that the judge was not authorized to grant a temporary injunction against such waste and trespasses until the final trial of the case.

4. We reverse the judgment of the trial judge because he granted a permanent injunction against the waste and trespasses of which the plaintiff complained, and because he enjoined the defendant, his croppers and tenants, from going upon the rented premises, unless the defendant would pay within a named time certain rents claimed by the plaintiff to be due him by the defendant; the injunction in this respect being mandatory, and having the effect of dispossessing the defendant and turning over to the plaintiff possession of the premises upon the failure of the defendant to pay such rent.

*Judgment reversed.   All the Justices concur.*

No. 5257.   JUNE 18, 1926.

Injunction.   Before Judge Stark.   Banks superior court.   December 22, 1925.

On October 15, 1923, Mrs. C. O. Dixon leased to W. C. Burns, for a term of six years beginning January 1, 1924, and ending December 31, 1929, a certain described tract of land.   Under the lease Burns was to pay her the sum of $100 on the execution of the lease, and was to make annual payments for rent thereafter of $100 each, on November 1, 1924, 1925, 1926, 1927, and 1928. The lease recited that it was understood by the parties that Mrs. Dixon had timber rights to all the bottom land timber and also any timber covered by the lease, but she had no timber rights on the right of the northeast side of the public road leading from Maysville to Homer.   Possession was to be given to Burns on January 1, 1924.   Burns agreed to cover the barn and crib with galvanized iron roofing, and was to have the right to use any of the material in the old barn for any building purposes or otherwise.   On October 27, 1923, Mrs. Dixon transferred and assigned all her right, title, and interest in and to the lease contract, together with her rights and lien as landlord or otherwise, to J. P. Hale.   On the same day Mrs. Dixon sold and conveyed said tract of land to Hale.   On November 17, 1925, Hale filed his petition against Burns, in which he alleged the facts hereinabove stated, and in addition made the following allegations:   Burns is a tenant holding over, said contract of lease having been breached by his failure to pay the rent as agreed in the lease contract, by having committed waste by having the timber on the premises cut, sawed into lumber, and split into cordwood, by disposing of the same and applying the proceeds to his own use, by plowing up the ditches and terraces on said land, and generally disregarding the terms and conditions of the lease.   He has continued to

cut and fell timber, selling the same, and threatens to cut, sell, use, or destroy all of said timber and to render the premises useless for agricultural purposes. He has already converted into lumber approximately 14,000 feet of hardwood timber of the value of $375, and has appropriated the same to his own use. He has cut and removed from said premises approximately 300 cords of wood, either selling the same or using the same on other premises possessed and controlled by him, of the value of $450. He has failed to pay the rent of $100 for the year 1924, which, with interest thereon at seven per cent. from November 1, 1924, is past due and owing to petitioner. He has failed and refused to pay the rental of $100 due November 1, 1925, which, together with interest thereon at the rate of seven per cent. per annum from said date, is due petitioner. Burns refuses to deliver possession of said premises to petitioner, continues to commit waste as aforesaid, and otherwise to continue in possession indefinitely, regardless of the contract of lease, and to generally destroy said premises and denude it of all timber. By reason of plowing up the ditches and terraces he has damaged petitioner in the sum of $1,000. By cutting and removing said hardwood timber, petitioner has been damaged in the sum of $375, and by cutting and removing said cordwood petitioner has been damaged in the sum of $450. Unless restrained, Burns will continue to commit waste, and a multiplicity of suits at law will be necessary. He has placed himself in a position to remove all of his property beyond the jurisdiction of the court. Hale prays that the defendant be restrained from cutting and removing the timber already felled or cut, from plowing up the ditches and terraces on said land, or in any manner committing waste thereon, and from disposing of or encumbering any of his property; that he have judgment against the defendant for such damages and for the rent past due; that the defendant be ejected as a tenant holding over; that possession be given to Hale; and that the contract of rental be cancelled.

The defendant demurred to the petition, on the grounds that it set forth no cause of action, and no reason why the plaintiff should resort to a court of equity. In his answer the defendant admitted the execution of the lease between him and Mrs. Dixon. He set up that he had in every way complied with all its provisions; and that the meaning of the language in the lease relating

to the rights of the lessor to the timber on the bottom land, according to the meaning put thereon by him and his lessor at the time of the execution of said lease, was that the timber growing on said land should be his property, and that he should have the right to clear up the land on which it stood and cultivate the same. He denied that he had cut fifteen thousand feet of hardwood on the premises, but admitted that he had converted some of the timber growing on the bottom land into lumber, which he insisted he had a perfect right to do under the terms of the lease. He denied that he had removed from the premises 300 cords of wood, that he had cut and removed any of the wood from said premises except the timber growing on the bottom land, that he failed to pay the rent due November 1, 1924, and November 1, 1925, contending that he paid the same in the manner hereinafter referred to, that he had committed waste, and that he was continuing to commit waste on the premises. He further set up that, by agreement made between him and the lessor at the time of the execution of said lease, all of the timber growing upon the bottom land was to become his property; that in pursuance of this agreement he had cleared and put into cultivation a considerable amount ·of the land embraced in said lease and had ditched and terraced the same, whereby its value had been greatly enhanced; that with the knowledge and consent of the lessor he had made repairs upon the dwelling-house, barn, crib, and tenant-houses on said premises, at the aggregate cost of $333; and that by agreement between him and his lessor he was to be repaid for the money used in making such repairs from the rents to be paid during said years of 1924 and 1925.

On the hearing of the application for temporary injunction the plaintiff introduced testimony tending to establish his contentions, and the defendant introduced evidence tending to establish the allegations of his answer. The plaintiff introduced no evidence contradicting the testimony of the defendant that he made the above repairs, and that by agreement between him and his lessor he was to be repaid for the cost from the rent due by him to his lessor for the years aforesaid, unless such denial might be inferred from the absence of such stipulation in the lease contract. After hearing the evidence and argument, the court found that the plaintiff as transferee of said lease had all the rights of landlord

against its enforcement, that he had purchased the premises from the lessor, that the defendant had breached the rent contract by failing to pay the annual rent, and by cutting and using considerable quantities of wood and timber from the premises, which he had no right to do under the lease, except from the bottom land. On these findings the judge ordered that the restraining order previously granted, enjoining the defendant from cutting wood and timber on said premises, except for its upkeep and for the use of the croppers and tenants thereon, be made permanent; and that the defendant, unless he paid plaintiff, by January 10, 1926, the rents due for the years 1924 and 1925, with interest thereon from the respective dates when said rents became due, be enjoined from further trespassing or going upon the premises, and that his tenants and croppers be likewise enjoined. He left the matter of the value of the wood and timber cut and used by the defendant, and any damages to the land, to be passed upon by a jury. To this judgment the defendant excepted, upon the grounds: (1) that it is contrary to law, contrary to the evidence, and without evidence to support it; (2) that the judge erred in granting a permanent injunction, and was without authority to grant the same under the facts in the case; and (3) that the judge erred in enjoining the defendant and his croppers and tenants from going on said place unless he paid the rents due for 1924 and 1925, which, as to that, was equivalent to granting a mandatory injunction, which was beyond the authority of the court; and that he should have refused the injunction prayed for on each ground set out in the demurrer.

*A. C. Wheeler,* for plaintiff in error.

*J. B. G. Logan* and *S. R. Jolly,* contra.