## KNOTT *v.* McWHIRTER.

1. The amendment to the petition, which was demurred to by the defendant, sought to make one a party who had no common interest with the defendant in the original petition and between whom and the original defendant there was no ground of common interest; and the court should have sustained the defendant's demurrer.
2. The demurrer having been erroneously overruled, what took place in the subsequent trial was entirely nugatory; and it is unnecessary to pass upon questions raised as to the rulings of the court during the progress of the trial and as to certain portions of the charge to the jury.

JULY 19, 1913.

Equitable petition. Before Judge Bell. Fulton superior court. February 19, 1912.

Alexander Ratteree was the owner of land lot 134 in the 14th district of Fulton county. Mrs. R. M. McWhirter, alleging that she was the owner of a lot which had been carved out of land lot 134, brought suit against J. J. Knott, alleging that he owned a lot of 8 acres carved out of land lot 134, and lying north of the plaintiff's lot. She derived title from Alexander Ratteree through a series of conveyances, the last having been executed in 1904, and describing the land as follows: "All that tract or parcel of land situated, lying, and being in land lot one hundred and thirty-four (134) of the fourteenth district of originally Henry, now Fulton county, Ga., commencing on the right of way of the Central Railroad, at the southeast corner of Dr. Knott's lot, and extending west along Dr. Knott's line nine hundred and forty-four (944) feet to the old Newnan Road, thence southeasterly nine hundred and twenty-nine (929) feet to a point on the Central road four hundred

and forty (440) feet south from the starting point, thence northerly four hundred and forty (440) feet along said right of way to the starting point; containing four and forty-one one hundredths (4.41) acres, more or less." The defendant's land adjoins petitioner's land on the north. He acquired title in the year 1882 by virtue of two deeds executed to him by W. T. Waters and A. P. Eskridge, in each of which the vendor conveyed to J. J. Knott all of his interest and title to "all that tract or parcel of land situated in the northern part of land lot one hundred and thirty-four (134) in the fourteenth (14th) district of originally Henry, now Fulton county, Georgia, containing eight acres, and bounded as follows: on the west by the Newnan Road, south and north by original line of lot number 134, and east by Macon and Western Railroad." In the original petition it is alleged: that Knott has entered upon the lands of petitioner and has begun to cut down and remove valuable trees growing on the premises; that when petitioner went into possession of this land there was a fence which she alleges marked the southern line of the property claimed by Knott; that some of the land lying north of this fence was in dispute between her grantor and Knott, and is now in dispute between her and Knott; that on February 1, 1905, Knott constructed across her premises, over her protest, a fence enclosing within his land a strip of her land about 80 feet wide and extending the entire length of her premises, and he is claiming possession of the same; that in the deed under which Knott holds the property is well defined; that the lines of petitioner's property depend upon the lines of the property of the defendant; and that it is necessary, in order to establish the exact line, that the same be surveyed. In May, 1907, the plaintiff by amendment showed the following: In 1870 Ratteree conveyed to Pritchett a tract containing 5 acres, and in 1871 to Waters a tract containing 3 acres. Waters acquired title to the 8 acres, and in 1882 Waters conveyed the 8 acres to Knott. Ratteree, in 1877, conveyed to H. F. Leak 171 acres of lot of land 134, being all of that tract except the 8 acres previously conveyed. In 1885 Leak conveyed to W. H. Loftin 4.41 acres adjoining the Knott tract, and being a portion of the 171 acres last referred to. Leak is now dead, but before his death, in the year 1900, he conveyed "said tract or parcel of land which had been conveyed by said Ratteree [to him] to his daughter and sole heir, Mrs. Maude

Leak Cobbs," by deed describing the land as follows: "All that tract or parcel of land lying and being in Fulton county, being one hundred and seventy-one (171) acres, more or less, bounded south by William Walker, west by Joseph Caldwell, east and north by Asa Toland, north by Julian Ratteree, except eight (8) acres on the north line in the old field between the big road and the Macon and Western and Central R. R. right of way, number one hundred and thirty-four (134) in the fourteenth district of originally Henry, now Fulton county aforesaid." The land conveyed to Loftin by Leak is marked by no natural landmarks, but the boundary commences at the southeast corner of the Knott tract and follows Knott's line west to the old Newnan Road; and before the Loftin tract can be laid out and defined by metes and bounds, it is necessary to ascertain the southeast corner of the Knott tract and define the south line of his tract between the right of way of the Macon & Western Railroad and the old Newnan Road. The dividing line between the Leak land (now Mrs. Cobbs' land) and that portion sold to Loftin (now petitioner's land) has never been definitely ascertained and marked; and before it can be fixed and determined, it is necessary to fix and determine the south line of Knott's parcel or tract. Mrs. Cobbs is interested in the location of the south line of Knott's tract, because the Loftin tract, which now belongs to petitioner, is to be laid out with reference to said south line, and Mrs. Cobbs owns the land adjoining the Loftin tract. The deed from Leak to Loftin is a warranty deed; and if the title to any portion of the land so conveyed should fail, there would be a breach of the warranty and Leak's estate would be liable; and "although Leak conveyed the title of all said tract or parcel of land conveyed to him by Ratteree, together with all his other property, as petitioner is informed and believes, to his daughter [Mrs. Cobbs], yet the same was without any consideration but made as a gift to his said daughter and only heir, and said property would be liable to any legal claim against H. F. Leak; that Mrs. Cobbs is not a bona fide owner for valuable consideration, but simply a volunteer." The land adjoining the Loftin lot (now petitioner's lot) on the south, for a distance of 929 feet, is now in the possession of Mrs. Cobbs, under the deed made by Leak, and she has no title, right, or possession which could be paramount to the title of petitioner to any portion of the land necessary to satisfy

the Leak deed to Loftin, and petitioner is entitled to a tract or parcel of land which will fulfil the description and measurements of the Leak deed to Loftin. Petitioner can not protect her rights under the original petition, the only party defendant thereto being Knott; while petitioner and Knott would be bound by a judgment or decree therein, fixing and determining the south line of the Knott land, the relative rights of petitioner and Mrs. Cobbs would not be fixed by such decree; for when petitioner seeks to have her tract laid out in accordance with the dimensions given in the Loftin deed, Mrs. Cobbs can object thereto and contend that the south line of the Knott tract was improperly located. Mrs. Cobbs therefore, is interested in a decree ascertaining and fixing the southeastern corner and southern line of the Knott tract or parcel of land; and petitioner prays that Mrs. Cobbs be made a party defendant to this suit. The court allowed the amendment, and Mrs. Cobbs was made a party defendant. The deeds showing the chain of conveyances putting title in petitioner, Knott, and Mrs. Cobbs are all attached to the petition as exhibits.

Knott demurred to the amendment on the grounds, among others, that the amendment seeks to bring into the case a party defendant who has no common interest with the defendant and is an improper party to be joined with him; that if Mrs. Cobbs has encroached upon the south side of the property claimed by the plaintiff, the defendant is in no way interested in the suit, and the plaintiff should assert her rights in a distinct suit against Mrs. Cobbs; and that if the amendment should be allowed, the suit would be multifarious, in that it would embrace separate and distinct causes of action against separate and distinct parties. This demurrer was overruled, and Knott excepted to this ruling, and to the refusal of a new trial after verdict which was adverse to him.

*Joseph W. & John D. Humphries* and *Herbert A. Sage,* for plaintiff in error.

*P. H. Brewster, J. L. Mayson,* and *Wimbish & Ellis,* contra.

Beck, J. (After stating the foregoing facts.)

1. We are of the opinion that the court erred in overruling the demurrer to the amendment seeking to make Mrs. Cobbs a party defendant to this case. Clearly she has no common right with the plaintiff or with the defendant. Under the allegations in the petition and in the proposed amendment, when they are considered

together, it distinctly appears that the description of the property which was conveyed by Leak to Loftin in 1885 was made with reference to the prior conveyances of Ratteree to Pritchett, Ratteree to Waters, and Waters to Knott, executed, respectively, in 1870, 1871, and 1882. These three deeds last referred to, especially the deed from Waters to Knott conveying 8 acres in 1882, fixed definitely and absolutely the southeast corner of the tract of land conveyed to Knott and the southern line of Knott's property; and the northern boundary of the land now claimed by Mrs. McWhirter, which was first carved out of the land conveyed by Ratteree to Leak when Leak sold to Loftin, was made identical with the line constituting the southern boundary of Knott's tract of land acquired by him from Waters or from Waters and Eskridge. There was nothing indefinite about the location of that southeast corner of Knott's land or of the southern boundary. If it afterwards became indefinite, it was because Knott crossed his southern line and invaded territory belonging to Leak, or to Leak's successors in title, to whom had been conveyed the land immediately adjoining the tract of 8 acres described in the conveyance by Waters to Knott. When in 1885 Leak conveyed to Loftin the 4.41 acres of land bounded on the north by the southern boundary of Knott's 8 acres of land, Knott could not have acquired any prescriptive title as against Leak's grantee, Loftin. If by subsequent adverse possession he acquired a good prescriptive title to the strip of land south of the southern boundary of his land as fixed by his deeds to the 8 acres of land, it was acquired to the loss of those who held, through subsequent conveyances, from Loftin; and if Knott acquired in this way a prescriptive title to a strip of land on the northern part of the 4.41 acres of land conveyed by Leak to Loftin, it in no way affected Mrs. Cobbs's title with which she became vested under the deed executed in 1900 by her father, H. F. Leak. If the title to any part of the land which Leak's deed to his daughter, Mrs. Cobbs, purports to convey, fails, it will be not because of any title to a strip of land acquired by Knott along the northern portions of the 4.41 acres of land, but because it embraces a part of the land which Leak had formerly conveyed to Loftin. For, examining the deed from Leak to his daughter, it seems to convey (though this may be an ambiguity) the land in land lot 134, "except eight (8) acres on the north line in the old field between the big road and the

Macon and· Western and Central R. R. right of way." The description we have just quoted may be ambiguous and open to this objection; but that does not affect what we have said above, that the title to the 8 acres of land to which Knott holds written title, and the 4.41 acres conveyed by Leak to Loftin and thence, by subsequent conveyances, to the plaintiff, is not affected by the deed which Leak executed to Mrs. Cobbs, it being subsequent in date of execution and record to the deed to Loftin, through whom Mrs. McWhirter derives title, and to the deed to Knott. There can be no controversy between Knott and Mrs. Cobbs, nor has he any common interest·with her. And the demurrer to the amendment seeking to make Mrs. Cobbs a party should have been sustained.

2. The court having erroneously overruled the demurrer offered by the defendant to the amendment to the petition, what took place in the trial subsequently to the overruling of the demurrer was entirely nugatory; and it is unnecessary to pass upon the questions that were raised as to the rulings of the court during the progress of the trial, and as to certain portions of the charge to the jury. *Louisville & Nashville R. Co.* v. *Reece,* 136 *Ga.* 394 (71 S. E. 695). *Judgment reversed. All the Justices concur.*